**James Alton McCOY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–93–327–CR.**

Court of Appeals of Texas,
Eastland.

May 26, 1994.

Phil Nichols, Nichols & Weaver, Stephenville, for appellant.

John Terrill, Dist. Atty., Stephenville, for appellee.

Opinion

McCLOUD, Chief Justice.

The jury convicted appellant, James Alton McCoy, of the felony offense of driving while intoxicated; and, after finding that the enhancement paragraph was true, the jury assessed appellant's punishment at confinement for 17 years. We affirm.

The record reveals that, while appellant was intoxicated, he lost control of the automobile he was driving and crashed into a tree. The sufficiency of the evidence is challenged.

■ Appellant contends in his first point of error that the trial court erred in permitting two police officers to read material before the jury from their written reports. We disagree. The record clearly shows that the officers, in response to the court's ruling and remarks, merely read the written reports to refresh their memories. The officers testified from their refreshed memory. See TEX.R.CRIM.EVID. 611; 1 JOHN W. STRONG, McCORMICK ON EVIDENCE ch. 2, § 9 (4th ed. 1992); 1 STEVEN GOODE, OLIN G. WELLBORN, III, M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 612.1–612.2 (Texas Practice 2d 1993).

*Bermen v. State,* 798 S.W.2d 8 (Tex.App.— Houston [1st Dist.] 1990), *pet'n dism'd,* 817 S.W.2d 86 (Tex.Cr.App.1991), cited by appellant, is distinguishable. There, the State introduced into evidence police reports containing statements regarding the ultimate issue of the defendant's guilt. No police records were introduced in this case. The officers testified after reviewing their reports and refreshing their memories. Appellant's first point is overruled.

■ While the State was cross-examining Michael Miller regarding Miller's opinion as to whom was driving the car, the prosecutor asked Miller if Miller had not been convicted of driving while intoxicated. Appellant objected to the question. The trial court sustained the objection, instructed the jury to disregard the question, and overruled appellant's motion for mistrial. Appellant urges in his second point of error that the court erred in overruling his motion for mistrial. We disagree. The court's instruction to the jury cured the error. *Huffman v. State*, 746 S.W.2d 212 (Tex.Cr.App.1988); *Carey v. State*, 537 S.W.2d 757 (Tex.Cr.App.1976). Appellant's second point of error is overruled.

■ Appellant next complains about two instructions given to the jury by the court in the charge. The court instructed the jury that a "[m]otor [v]ehicle" means every vehicle which is self-propelled, and "includes an automobile."[1] The jury was instructed that "[p]ublic [p]lace" means any place to which the public or a substantial group of the public has access and includes, "but is not limited to, streets and highways."[2] Appellant argues that the instructions constituted an improper comment on the weight of the evidence by the court. We disagree.

TEX.CODE CRIM.PRO.ANN. art. 36.14 (Vernon Supp.1994) provides that the judge shall distinctly set forth in the written charge the "law applicable to the case." We hold that the instructions were proper and did not constitute an improper comment on the evidence. Appellant's point is overruled.

■ In his fourth point, appellant argues that the trial court erred by submitting a charge to the jury that varied from the indictment.

The indictment alleged that appellant "did not have the normal use of his mental and physical *facilities* by reason of the introduction of alcohol." (Emphasis added) The word "facilities" is an incorrect word. The indictment should have contained the word "faculties" instead of the word "facilities."[3] The two words have different meanings. In BLACK'S LAW DICTIONARY 531 & 533 (rev. 5th ed. 1979), "facilities" are defined as:

That which promotes the ease of any action, operation, transaction, or course of conduct. The term normally denotes inanimate means rather than human agencies, though it may also include animate beings such as persons, people and groups thereof.

Whereas, "faculties" are defined as: "Abilities; powers; capabilities." BLACK'S LAW DICTIONARY 533, supra.

Throughout the trial, the proper word "faculties" was used in connection with the definitions or instructions. The trial court's charge used the word "faculties" as required by the statute instead of the incorrect word "facilities" as used in the indictment. Appellant objected to the use of the word "faculties" in the charge because it varied from the word "facilities" which was used in the indictment.

Appellant did not object to the indictment which improperly used the word facilities instead of faculties. TEX.CODE CRIM. PRO.ANN. art. 1.14(b) (Vernon Supp.1994) expressly provides that a defendant who does not timely object to a "defect, error, or irregularity of form or substance" in an instrument waives and forfeits the right to object to the defect, error, or irregularity and that he may not raise the objection on appeal or in any other post-conviction proceeding. The

---

1. See TEX.REV.CIV.STAT.ANN. art. 6701d–11, § 1(1) & (2) (Vernon Supp.1994).

2. "Public place" is defined in TEX.PENAL CODE ANN. § 1.07(a)(29) (Vernon 1974) as:

"Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

3. "Intoxicated" is defined in TEX.REV.CIV. STAT.ANN. art. 6701*l*–1(a)(2)(A) (Vernon Supp. 1994) as:

[N]ot having the normal use of mental or physical *faculties* by reason of the introduction of alcohol, a controlled substance, a drug, a substance or its vapors that contain a volatile chemical, an abusable glue, or an aerosol paint, or a combination of two or more of those substances into the body. (Emphasis added)

indictment, on its face, was defective because it failed to use the word "faculties." Appellant elected not to challenge the defect. Appellant now argues that he can challenge the defect by urging, as he did in the trial court, that the charge failed to conform to the indictment. Appellant asserts that the trial court was bound to use the word facilities in the charge because that was the word used in the indictment.

We hold that, when he failed to object to the defect in the indictment, appellant waived his right to complain about the error and that the court could properly cure the error by correctly charging the jury as to the statutory definition of intoxication. To hold otherwise would render Article 1.14(b) useless. A defendant could reverse a conviction based upon a defective indictment by urging that the court's charge failed to comport to the defective indictment which the defendant elected not to timely attack. This is not the intent of Article 1.14(b) or the amendment to TEX. CONST. art. IV, § 12. See *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990). We hold that appellant, by not timely objecting to the improper indictment, waived any error regarding the use of the improper word. Appellant's *fourth* point of error is overruled.

■ Finally, appellant urges that the evidence is insufficient to support the conviction. Appellant contends that he was not driving the car. In order to determine if the evidence is sufficient to support the verdict, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991).

Both appellant and Carolyn Ann Harmon, who was in the front seat of the automobile with appellant at the time of the collision, testified that Harmon, not appellant, was driving the car. Miller testified that he saw the car in his rear view mirror just before the wreck and that he thought Harmon was driving. However, Bruce Gregory, who went immediately to the wrecked automobile, testified as follows:

. A: Well, as I approached the car I thought they were scuffling there for a minute, and the driver was throwed across the lady or the woman's lap to the side, and as we got to the side of the car she was—huh—he had his feet hung up in under the brake and the foot feed, she couldn't get his feet out from under the brake and foot feed, and she had some trouble ever getting his feet out from under the brake and foot feed and moving it over to the other side, he was—

\* \* \* \* \* \*

Q: Was the man the one driving the car?

A: The man was driving the car.

Q: Now, what did you say when you saw her trying to pull him out from under the wheel there?

A: I told her she just as well quit it, I done seen who was driving the car.

Q: What did she say?

A: Well, she didn't say anything for a minute or two until she got his feet back on the other side and then she jumped up on the front part of the seat like this (INDICATING) and grabbed the steering wheel and said, I was driving, I was driving, I was driving, I said, like hell you was driving, I seen who was driving.

Also, Carroll Martin, the investigating officer, testified that, on the day after the accident, Harmon told him that appellant was driving the car at the time of the collision. We hold that the evidence is sufficient to support the conviction.

The judgment of the trial court is affirmed.