**Wesley L. HINES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–97–00106–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 2, 1998.

Decided July 2, 1998.

Troy A. Hornsby, Miller, James, Miller, Wyly, Hornsby, Texarkana, for appellant.

James H. Elliott, Bowie County Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Wesley L. Hines was convicted of capital murder. Trial was to a jury, but the trial court assessed Hines's punishment at life imprisonment. We affirm the judgment.

The evidence, viewed in the light most favorable to the State, showed that Hines and Christopher Britt drove to Bobby Dan Ashmore's apartment. Hines entered the apartment with the intent to rob Ashmore. While in the apartment, Hines killed Ashmore and took two lights, forty-four dollars, some clothes, and a pager. Hines then drove with Britt to a remote bridge, burned the clothes, and disposed of the knife he used to kill Ashmore. He then hid the lights in Britt's back yard, put the pager under the seat of Britt's truck, and placed the batteries in his own pocket.

Hines admits that he murdered Ashmore, but he contends that he had no intent to rob him either before or during the murder. He alleges that he only decided to rob Ashmore after the murder, so he should not have been convicted of capital murder while committing robbery. Hines said that he went to Ashmore's apartment and that Ashmore answered the door wearing no clothes. He alleges that when he entered the apartment Ashmore made sexual advances toward him. Hines claims that he then took a kitchen knife and cut and stabbed Ashmore to death. He asserts that he formed the intent to take things from the apartment after he killed Ashmore.

Hines contends in four issues that: 1) the evidence is legally and factually insufficient to support his conviction; 2) the charge's instruction on reasonable doubt did not exactly comply with the law; 3) the indictment, which charged capital murder based on robbery, was defective because it did not describe the property stolen in the robbery; and 4) the indictment failed to adequately describe the victim of the robbery.

▮▮▮ Hines first contends that the evidence is legally and factually insufficient to support his conviction. The evidence of Hines's intent to rob Ashmore came mainly from Britt. The trial court instructed the jury that Britt was an accomplice as a matter of law. This required that Britt's testimony be corroborated as required by Article 38.14 of the Texas Code of Criminal Procedure.

See Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). To determine whether an accomplice's testimony is corroborated, we must eliminate the accomplice testimony and review the remaining evidence to determine whether it tends to connect the defendant to the offense. *Knox v. State*, 934 S.W.2d 678, 686 (Tex.Crim.App.1996); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App.1993). The corroborative evidence need not establish the defendant's guilt; it only needs to connect the defendant to the offense. *Knox v. State*, 934 S.W.2d at 686. Each case must be considered on its own facts and circumstances, because there is no precise rule that can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994); *Brosky v. State*, 915 S.W.2d 120, 138 (Tex.App.—Fort Worth, pet. ref'd), *cert. denied*, —— U.S. ——, 117 S.Ct. 537, 136 L.Ed.2d 422 (1996). Accomplice testimony need not be corroborated as to every element of the offense.[1] *Warren v. State*, 514 S.W.2d 458, 463 (Tex.Crim.App.1974), *overr. on other grounds, Reed v. State*, 744 S.W.2d 112 (Tex. Crim.App.1988); *Brosky v. State*, 915 S.W.2d at 138. Evidence other than that from Britt linking Hines to the crime is Hines's own confession describing how he murdered Ashmore. Also, police officers found two batteries on Hines's person, and the batteries fit a pager that was missing from Ashmore's apartment and that was found under the seat that Hines was sitting in when he was apprehended. We find that this evidence is sufficient to link Hines to the crime and to corroborate the accomplice's testimony. Thus, we may base our determination of the suffi-

ciency of the evidence on all the evidence, including that from Britt, the accomplice.

 When an appellant challenges both the legal and factual sufficiency of the evidence, we first determine whether the evidence adduced at the trial is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996); *Gaffney v. State*, 937 S.W.2d 540, 541 (Tex.App.— Texarkana 1996, pet. ref'd). The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Royal v. State*, 944 S.W.2d 33, 35 (Tex.App.—Texarkana 1997, pet. ref'd); *Gaffney v. State*, 937 S.W.2d at 541. If there is any evidence that could ·establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. *Anderson v. State*, 871 S.W.2d 900, 902 (Tex. App.—Houston [1st Dist.] 1994, no pet.). We position ourselves as a final due process safeguard, ensuring only the rationality of the fact finder. *Gaffney v. State*, 937 S.W.2d at 541.

 In conducting a factual sufficiency review, we review the fact finder's weighing of the evidence in an appropriately deferential way to avoid substituting our judgment for that of the fact finder. *Id.; Clewis v. State*, 922 S.W.2d at 135. We view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v.*

---

1. Hines argues that we should exclude the testimony of the accomplice in our review of the sufficiency of the evidence. Further, he argues that when we do so, there is factually and legally insufficient evidence to establish that he formed an intent to commit the offense of robbery before or during the murder. Historically, the Texas Court of Criminal Appeals has held that in a capital murder prosecution, the testimony of an accomplice must be corroborated by not only linking the defendant to the crime but also corroborating the accomplice's testimony regarding the facts that make the killing a capital murder. *County v. State*, 668 S.W.2d 708, 710–12 (Tex. Crim.App.1984); *Fortenberry v. State*, 579 S.W.2d

482, 484–86 (Tex.Crim.App.1979). However, in 1986 the Texas Court of Criminal Appeals held that the general standard of corroboration also applied to capital murder cases. *Holladay v. State*, 709 S.W.2d 194 (Tex.Crim.App.1986). Subsequently, the court has announced only a single test for determining the sufficiency of corroborating evidence to support accomplice testimony. *See generally Knox v. State*, 934 S.W.2d 678 (Tex.Crim.App.1996); *Colella v. State*, 915 S.W.2d 834, 839 (Tex.Crim.App.1995); *Munoz v. State*, 853 S.W.2d 558 (Tex.Crim.App.1993). Thus, there need not be corroborating evidence in the record as to Hines's intent to rob the victim.

*State*, 922 S.W.2d at 135. We may not reweigh the evidence and set aside the jury verdict merely because we feel that a different result is more reasonable. *Id.* Additionally, when there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *Taylor v. State*, 921 S.W.2d 740, 746 (Tex.App.—El Paso 1996, no pet.). If we find the evidence factually insufficient, we reverse and remand the cause for a new trial. *Gaffney v. State*, 937 S.W.2d at 541.

Britt testified that he and Hines were at a party when Hines told him he knew where he could get some money for gas. Hines admitted going to Ashmore's apartment and cutting and stabbing him to death. Britt testified that Hines left the apartment carrying a knife, two lights, forty four dollars, and a pager. A police officer testified that the pager was found under Hines's seat in Britt's truck and that batteries fitting the pager were found on Hines. Additionally, Britt testified that Hines said, "I got the money, and it didn't go very well getting it, so I killed him."

An element that raises murder to capital murder is that the murder is committed "in the course of committing or attempting to commit ... burglary [or] robbery...." TEX. PENAL CODE ANN. § 19.03(a) (Vernon 1994). The Court of Criminal Appeals has defined "in the course of committing" as "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense." *Garrett v. State*, 851 S.W.2d 853, 856 (Tex.Crim.App.1993).

■ Intent may be proven by words of the actor or may be inferred from his actions. *Robertson v. State*, 871 S.W.2d 701 (Tex.Crim.App.1993). Hines's actions in going to Ashmore's apartment to get money, together with his statement that "I got the money, and it didn't go very well getting it, so I killed him," are sufficient, under either a legal or factual sufficiency review, to support a conclusion that Hines killed Ashmore in the course of committing robbery.

■ Hines also contends that the reasonable doubt instruction does not exactly follow the requirements of the law. In reviewing a trial court's jury instructions, we first determine whether the instruction given, or the omission of the instruction, was erroneous, and then we determine if the error caused sufficient harm to require reversal. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996); *Hall v. State*, 937 S.W.2d 580, 582 (Tex.App.—Texarkana 1996, pet. ref'd); *Irizarry v. State*, 916 S.W.2d 612 (Tex.App.—San Antonio 1996, pet. ref'd); *Dutton v. State*, 874 S.W.2d 206 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

In *Geesa v. State*, the Texas Court of Criminal Appeals articulated an instruction on reasonable doubt that must be given to the jury in all criminal cases.[2] *Geesa v.*

2. The full text of the instruction on reasonable doubt required by *Geesa* is:

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not guilty".

*State*, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991). The court's charge in this case gave the complete and correct *Geesa* instruction except for the last sentence of the first paragraph. This sentence should state, "The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case." *Id.* The sentence in this case stated, "The presumption of innocence alone is sufficient to acquit the Defendant." The original *Geesa* opinion, which was issued November 6, 1991, did not contain the language "unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case." Subsequently, on November 26, 1991, the opinion was amended to add this language. For cases tried after November 6, 1991, but on or before November 26, 1991, the unamended instruction complies with the requirements of *Geesa*. *Boozer v. State*, 848 S.W.2d 368, 369 (Tex.App.— Houston [1st Dist.] 1993, pet. ref'd). The unamended instruction in this case was error because the case was tried after November 26, 1991. *Id.; see also Ahmadi v. State*, 864 S.W.2d 776, 779 (Tex.App.—Fort Worth 1993, pet. ref'd). Having found error, we proceed to a harm analysis.

■ In *Reyes v. State*, the Texas Court of Criminal Appeals addressed the issue of whether the failure to give the *Geesa* instruction can ever be harmless error. *Reyes v. State*, 938 S.W.2d 718 (Tex.Crim.App.1996). The court stated:

> Our holding in *Geesa*, namely that the reasonable doubt instruction "*shall* be submitted to the jury in *all* criminal cases, *even in the absence of an objection or request* by the State or the defendant, whether the evidence be circumstantial or direct," created an absolute systemic requirement that cannot be waived or forfeited. Such requirements are not subject to a harm analysis.

*Id.* at 720–21. However, *Reyes* dealt with the situation where the entire *Geesa* instruction was omitted. *Mann v. State*, 964 S.W.2d

639 (Tex.Crim.App.1998). In this case, the whole reasonable doubt instruction was given except for one phrase.

The Texas Court of Criminal Appeals has recently held:

> [W]here an error in the jury charge on reasonable doubt or burden of proof is isolated to one portion thereof and the remainder of the jury charge contains language negating the erroneous portion thereof, the effect of the error is analyzed by employment of the standards set forth by this Court in *Abdnor* and *Almanza* ....

*Mann v. State*, 964 S.W.2d at 642. Thus, we will analyze whether the error in this case is harmful and requires reversal using the *Abdnor* and *Almanza* standards.

■ The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d at 641; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex.App.—Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error "is calculated to injure the rights of the defendant." *Almanza v. State*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex.App.—Texarkana 1996, pet. ref'd). Hines did not object to the instruction in question. Therefore, we will reverse the cause only if Hines has shown that the error caused him egregious harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim. App.1994); *Peterson v. State*, 942 S.W.2d 206, 208 (Tex.App.—Texarkana 1997, pet. ref'd). Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991); *Hall v. State*, 937 S.W.2d at 583. We

*Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim. App.1991).

determine harm in light of the entire jury charge, the state of the evidence, including contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record as a whole. *Mann v. State*, 964 S.W.2d at 641; *Rudd v. State*, 921 S.W.2d at 373. The purpose is to eliminate the actual and not just the theoretical harm to the accused. *Rudd v. State*, 921 S.W.2d at 373.

■■ The question, then, is whether omitting the phrase "unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case" constitutes egregious harm. The omitted phrase, if it had not been omitted, would actually have operated to harm Hines and benefit the State, because it placed a less onerous burden on the State. Because the omitted phrase was more favorable to the State, its omission clearly did not cause egregious harm to Hines. *See Boozer v. State*, 848 S.W.2d 368 at 369; *Ahmadi v. State*, 864 S.W.2d at 779.

■■ In his third and fourth issues, Hines contends that the indictment was insufficient. Specifically, he argues that it did not adequately describe the property stolen or the name of the victim of the robbery. Hines did not file a motion to quash the indictment. Article 1.14(b) of the Texas Code of Criminal Procedure states that a defect of form or substance in an indictment is waived if no objection is made before the date the trial commences. *See* TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp. 1998); *State v. Murk*, 815 S.W.2d 556, 557 (Tex.Crim.App.1991); *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990). Defects going to notice are defects of form. *State v. Murk*, 815 S.W.2d at 557; *Studer v. State*, 799 S.W.2d at 267 n. 5. The reasoning behind Article 1.14(b) is that a defendant should have notice of the crime he is charged with committing, but a conviction should not be reversed simply because the charging instrument may have technical errors that the defendant did not raise to the trial court. *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim.App.1997). The legislative history of Article 1.14(b) supports this reasoning, "It

[charging instrument] would advise that person essentially what he is charged with, but you don't have to worry about whether you describe the car sufficiently, or the weapon sufficiently, or those things, as long as it gives some kind of notice of what the charge is." *Id.* at 550. Only if the indictment is so defective that it no longer serves as an indictment is it constitutionally defective. *See* TEX. CONST. art. V, § 12(b); *Cook v. State*, 902 S.W.2d 471, 476 (Tex.Crim.App.1995). The indictment must allege the crime with enough specificity and clarity that the defendant can identify the penal statute under which the State intends to prosecute. *Duron v. State*, 956 S.W.2d at 550. If it does so, it is an indictment, and the defendant must move to quash it if it is otherwise defective. The indictment in this case stated:

> WESLEY L. HINES ... did unlawfully then and there intentionally cause the death of an individual, Bobby Dan Ashmore, by cutting and stabbing the person of Bobby Dan Ashmore with a knife, and the said Wesley L. Hines was then and there in the course of committing or attempting to commit the offense of robbery....

This clearly states that Hines is the person charged, and the language is specific and clear enough to discern the penal statute that Hines is charged with violating. The fact that the indictment does not specifically describe the property stolen or is arguably ambiguous as to the victim's identity is a matter that should have been raised before trial in a motion to quash. Therefore, Hines has waived error on this issue. *See generally State v. Smith*, 957 S.W.2d 163, 164–65 (Tex.App.-Austin 1997, no pet.); *McCoy v. State*, 877 S.W.2d 844 (Tex.App.-Eastland 1994, no pet.).

For the reasons stated, we affirm the judgment.