ACCEPTED
06-15-00079-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/12/2015 3:52:03 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

**BOBBY JOE EVENS,**
APPELLANT

v.

**THE STATE OF TEXAS,**
APPELLEE

§
§
§
§
§
§
§
§
§

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/12/2015 3:52:03 PM
DEBBIE AUTREY
Clerk

**Nos. 06-15-00079-CR**

---

## STATE'S BRIEF

---

FROM THE 196TH JUDICIAL DISTRICT COURT
HUNT COUNTY, TEXAS

TRIAL CAUSE NUMBER 27,388
THE HONORABLE J. ANDREW BENCH, JUDGE PRESIDING

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**KELI M. AIKEN**
First Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX  75403
kaiken@huntcounty.net
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

**NO ORAL ARGUMENT
REQUESTED**

# TABLE OF CONTENTS

Table of Contents.................................................................................................2

Index of Authorities........................................................................................3–4

Statement of the Case.........................................................................................5

Issues Presented............................................................................................7–22

    1. Even if the Appellant was entitled to an accomplice witness instruction, the error was harmless because overwhelming corroborating evidence showed proof of Appellant's guilt beyond a reasonable doubt...............................7–15

    2. The evidence was legally sufficient to prove Appellant guilty of Manufacture / Delivery of Cocaine as alleged in the indictment. ................................... 15–22

Prayer................................................................................................................23

Certificate of Service.......................................................................................24

Certificate of Compliance with Rule 9.4 ........................................................24

# INDEX OF AUTHORITIES

**STATE CASES:**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)...................................... 6

*Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex. Crim. App. 1986)............... 16–17

*Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996)............................... 16

*Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006)* ................................. 6

*Dewberry v. State,* 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000) ........................................................................................................... 16

*Fernandez v. State,* 805 S.W.2d 451, (Tex. Crim. App. 1991) ......................... 16–17

*Herron v. State,* 86 S.W.3d 621, 631 (Tex. Crim. App. 2002);............................... 6

*Hines v. State,* 978 S.W.2d 169, 172 (Tex. App.—Texarkana, no pet.).................. 16

*Johnson v. State*, 23 W.W.3d 1, 7 (Tex. Crim App. 2002)................................. 15–16

*Jones v. State*, 195 S.W.3d 279, 290 (Tex. App.—Ft. Worth 2006, pet. ref'd) ....... 6

*Poindexter v. State,* 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)....................... 16

*Smith v. State, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011)* ................................. 6

*Threadgill v. State,* 146 S.W.3d 654, 663 (Tex. Crim. App. 2004)....................... 16

*Watson v. State,* 204 S.W.3d 404, 415 (Tex. Crim. App. 2006) ............................ 16

**STATE STATUTES:**

TEX. C. CRIM. PRO. ART. 38.14 (Vernon 2015)........................................................ 6

TEX. PEN. C. § 1.07(A)(39) (VERNON 2015)............................................................. 17

TEX. PEN. C. § 6.01(B) (VERNON 2015)................................................................... 17

TEX. CONT. SUBST. ACT § 481.112 (VERNON 2015) .................................................. 17

# IN THE COURT OF APPEALS FOR THE
# SIXTH DISTRICT OF TEXAS AT TEXARKANA

| | | |
|---|---|---|
| **BOBBY JOE EVENS,** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **Nos. 06-15-00079-CR** |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

---

## STATE'S BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES the State of Texas, Appellee, in this appeal from Cause No. 27,388 in the 196th Judicial District Court in and for Hunt County, Texas, Honorable J. Andrew Bench, Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Court in support of the judgment of sentence in the court below.

# SUMMARY OF THE STATE'S ARGUMENT

Even if the trial court should have submitted an accomplice witness instruction, failure to do so did not result in egregious harm where Appellant admitted to every element of the offense, two officers observed the drug transaction, and two additional officers searched both Appellant and Smith and recovered the money and cocaine. The reliable and credible non accomplice witness testimony and evidence in this case was convincing and clearly showed Appellant's guilt as well as tended to connect him to the offense.

Furthermore, each and every required element of the offense of Manufacture / Delivery of a Controlled Substance was proven beyond a reasonable doubt. The evidence was legally sufficient and supported the jury's verdict.

Appellant's arguments are overcome by the evidence showing his clear guilt in this matter, and his conviction should be affirmed.

## STATE'S RESPONSE TO POINTS OF ERROR ONE

**Even if the Appellant was entitled to an accomplice witness instruction, the error was harmless because overwhelming corroborating evidence showed proof of Appellant's guilt beyond a reasonable doubt.**

### Argument and Authorities

An accomplice witness at law is one who can be charged with the same offense as the defendant or a related lesser-included offense. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). When a witness is an accomplice as a matter of law, the trial court is required to submit an article 38.14 instruction to the jury. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011); TEX. CODE CRIM. PRO. ART. 38.14 (Vernon 2015). If a required accomplice witness instruction is omitted, and Appellant did not object to the charge or request submission of the instruction, then the appellate court looks at the record to determine if the error caused egregious harm. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

> Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.

*Jones v. State*, 195 S.W.3d 279, 290 (Tex. App.—Ft. Worth 2006, pet. ref'd);

*Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

In determining the sufficiency of corroborating evidence, the court eliminates the testimony of the accomplice witness and examines all other evidence and testimony looking for the reliability and believability as well as the tendency to connect Appellant to the crime. *Hall v. State*, 161 S.W.3d 142, 149–150 (Tex. App.—Texarkana 2005, pet. ref'd).

### A. Appellant admitted his guilt to this crime as part of his prior testimony in a federal case.

There is no reason to doubt the reliability or believability of Appellant's prior testimony that admitted to the elements of this crime. The certified transcript was published to the jury. SE22. Furthermore, the transcript tends to connect Appellant to this offense in that on May 21, 2013 in a co-conspirators federal trial, Appellant testified:

1.) his most recent employment included roofing and selling drugs;

2.) he was distributing drugs in Hunt County, Greenville, Texas;

3.) he sold crack cocaine;

4.) he explained how 3.5 grams was a typical sell but he also sold in 7 gram amounts and called the 7 gram sell a "Vick;"

5.) he delivered crack cocaine to customers in Greenville at convenience stores in town;

6.) he was stopped after meeting with Robert Lewis Smith and had over $1,000.00 seized from him;

7.) that day he had met with Smith (whom he calls Emory) at the store;

8

8.) he identified a photo of Smith and said he calls him Emory because Smith lives in Emory, Texas;

9.) he also said he was talking about drug sales from February 2010 through September 2011;

10.) he identified his house on Pepperport street;

11.) he identified his truck that he used to deliver drugs on several occasions;

SE22. Appellant implicates himself as a drug dealer who sold cocaine to Smith in up to 7 gram amounts during the timeframe to include November 9, 2010 at various convenience stores in Greenville, Hunt County, Texas while driving his truck. *Id.* A reasonable inference from this testimony shows that Appellant admitted to every element of this offense in his prior federal testimony.

**B. Inv. Warren Mitchell told the jury how he saw what he believed to be a narcotics transaction between Appellant and Smith and the steps he took to make sure the drug dealer, Appellant, and the buyer, Smith were taken into custody.**

As a professional narcotics officer with a specialized level of training, Inv. Mitchell's detailed observations and testimony are inherently reliable and believable. Inv. Mitchell explained his credentials as a peace officer. RR5/33–34. He was a peace officer since 1988, holds a master peace officer certification, and is an instructor for the Texas Commission on Law Enforcement and Education. *Id.* Inv. Mitchell also has special additional certification from the National Alliance of Drug Endangered Children to teach courses. *Id.* Inv. Mitchell

9

completed the basic Drug Enforcement Administration narcotics officers training in 2008 and has numerous continuing education hours as well as work with the Texas Narcotics Officer's Association. RR5/34–35. He has also worked as an instructor in narcotics investigation and has personally investigated hundreds of cases over the last six years. *Id.*

At trial Inv. Mitchell identified Appellant for the jury. RR5/35, lines 7–17. On November 9, 2010 Inv. Mitchell saw Appellant driving his blue and tan ford pickup truck. RR5/35, lines 18–25. Appellant drove from a house he stayed at to a convenience store called NAT 24 on the corner of Sayle and Joe Ramsey Boulevard in Hunt County, Texas. RR5/36–37. Two other narcotics investigators, Inv. Jason Whitten and Inv. Vic Roberts, were riding with Inv. Mitchell. RR5/36, lines 10–14.

When Appellant arrived at the NAT 24 he pulled in on the west side close to the northwest corner of the store. RR5/37, lines 3–7. Appellant did not get out of the car, go into the convenience store or get gas that day. RR5/37–66. Inv. Mitchell saw a white ford vehicle next to where Appellant parked. RR5/37, lines 20–25. He watched the Hispanic female driver get out and go into the store and the black male passenger (Robert Lewis Smith, Jr.) get out of the front seat, walk around the back of his car and get into Appellant's front passenger seat. RR5/37–38. Smith stayed in Appellant's truck less than two minutes. RR5/38, lines 4–7.

10

Inv. Mitchell testified that based on his training and experience, he believed a drug transaction had just occurred between Appellant and Smith. RR5/38, lines 14–16.

Based on what he observed, Inv. Mitchell called Lt. Cole to stop Appellant when he left the store and called patrol officers to come and stop Smith when he left. RR5/38–39. He was around one hundred yards from Appellant when he observed the drug transaction. RR5/60–61. Inv. Mitchell stayed and watched Lt. Cole come and follow Appellant to make a traffic stop. RR5/38–39. Lt. Cole started following Appellant right after the buy occurred. *Id.* Inv. Mitchell also stayed and watched Officer Larry Henderson and Officer Phillip Spencer confront Smith. *Id.*

Inv. Mitchell also showed the jury photos that showed his interaction with other members of his drug conspiracy. SE8–21; RR5/51–56. The photos showed Appellant driving the same truck as the one he was arrested in for this crime. SE13–17. They also showed him at a car wash and his vehicle at the house on Pepperport. SE18–21. The car wash photo is significant because Appellant did drug deals there and in fact had previously done deals there with Smith. SE4; SE18–19. Inv. Mitchell also testified to the submission of the drugs to the lab and identified the drugs that were admitted as State's Exhibit 1. SE1; RR5/46–48 and pp.63–66.

## C. Inv. Jason Whitten told the jury that what he saw was a drug transaction.

Inv. Whitten's training and experience coupled with his testimony show that he was reliable and believable witness. Inv. Whitten has been a peace officer for almost twenty years and is currently working as a narcotics task force officer for the Drug Enforcement Administration federal task force. RR5/113, lines 4–11. He has worked as narcotics investigator for eight years and has attended several training classes, narcotics schools as well as training at Quantico. RR5/113, lines 16–20. He has worked undercover as a narcotics officer and witnessed drug buys. RR5/113–114.

On November 9, 2010 Inv. Whitten was riding with Inv. Mitchell and Roberts and they saw Appellant driving his truck in Greenville, Texas from near his residence to the NAT 24. RR5/114, lines 3–20. Inv. Whitten saw Smith's car and Appellant's truck next to it. RR5/114–115. He watched Smith get out of the car and get in Appellant's truck. RR5/115, lines 9–10. Smith was in Appellant's truck around a minute. *Id.* Based on his training and experience Inv. Whitten believed a narcotics deal had just occurred. RR5/115, lines 11–20. Inv. Mitchell called for officers to pull over Appellant and Smith. RR5/115–116. He waited with Inv. Mitchell until Lt. Cole and Officer Henderson arrived. *Id.*

### D. Lt. Will Cole explained to the jury how he found Appellant leaving the scene and what items he discovered during Appellant's arrest.

Lt. Will Cole is an expert in law enforcement who testified to his credentials and experience who testified reliably and believably about his interaction with Appellant on the date of the crime. Lt. Cole has worked as a peace officer for twenty-eight years. RR5/133, lines 7–10. He has held numerous positions within the department including supervisory roles such as both the criminal investigations lieutenant and now as patrol commander. RR5/132–133. On November 9, 2010 he was called to assist in a narcotics investigation at the request of Inv. Mitchell. RR5/133–134. Lt. Cole identified Appellant as the person he contacted in a traffic stop about a block and a half from the convenience store. *Id.* Lt. Cole arrived at the scene as Appellant was pulling out of the convenience store. RR5/134, lines 11–16. Lt. Cole searched Appellant after he took him into custody and found $1030.00 RR5/134, lines 5–13. Lt. Cole made a property receipt detailing the specific denominations of cash seized from Appellant as well as the total amount. RR5/135–136. Photographs of the items recovered were admitted and published to the jury. *Id.*; SE23–26. In the money collected from Appellant that day Lt. Cole recovered at least ten $20 bills. RR5/136, lines 19–22.

13

**E. Officer Larry Henderson told the jury how he came into contact with Smith that day and Officer Henderson recovered cocaine where he saw Smith take furtive action as he pulled up behind him.**

Officer Larry Henderson responded in his marked vehicle to the NAT 24 on November 9, 2010 at the request of Inv. Mitchell. RR5/122–123. As he pulled in behind Smith's car he saw Smith "make a distinct stuffing motion to the left side in between the driver's seat and the passenger seat." RR5/123, lines 12–24. Officer Henderson said he felt Smith was "concealing narcotics" based on the evasive actions Smith took as the officer arrived. *Id.* A female driver was in the store when Officer Henderson arrived but Smith and a back seat passenger were in the car. RR5/123–124. Officer Henderson watched for further movement in the car and tried to keep the occupants from further concealing the items in the car by removing everyone from the vehicle. RR5/124, lines 10–23. Officer Henderson identified the people from the car, including Robert Lewis Smith. RR5/124–125. Both Smith and the other male had warrants and were taken into custody. RR5/125–126. Officer Henderson searched the vehicle with special attention to the area where he had seen Smith throw an object. RR5/128–129. Officer Henderson located the drugs marked as State's Exhibit 1 "on the hump that separates the passenger and driver's seat on the driver's side of the hump" where he saw Smith make furtive movements. RR5/129, lines 2–23. The jury saw Officer Henderson's in car video. SE3.

14

**F. Chemist Drew Fout explained to the jury how the cocaine was tested and that it weighted over four grams.**

Chemist Drew Fout was a reliable and believable witness based upon his vast training and experience in the field of forensic chemistry and specifically analysis and identification of controlled substances. He is the drug section supervisor for the Texas Department of Public Safety Crime Lab in Austin. RR5/105, lines 12–15. He has worked as an analyst for fifteen years and testified numerous times on the area of forensic drug analysis. RR5/105–106. Mr. Fout identified the drug as 5.63 grams of cocaine. SE1; RR5/107–109. His report was also admitted and published to the jury. SE2; RR5/p.109, lines 4–22.

Any error in failure to include an accomplice witness instruction was harmless as the reliable, believable evidence submitted to the jury tended to connect Appellant to the offense. Furthermore, the convincing evidence presented in this case show how persuasive the State's evidence was and Appellant's conviction should be affirmed.

## STATE'S RESPONSE TO POINT OF ERROR TWO

**The evidence was legally sufficient to prove Appellant guilty of Manufacture / Delivery of Cocaine as alleged in the indictment.**

### Argument and Authorities

The proper standard of review to determine legal sufficiency is whether the evidence would support the verdict when viewed in the light most favorable to

15

the verdict. *Johnson v. State*, 23 W.W.3d 1, 7 (Tex. Crim. App. 2001). In other words, if a reasonable trier of fact could have found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Hines v. State*, 978 S.W.2d 169, 172 (Tex. App.—Texarkana, no pet.).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts. *Jackson v. Virginia*, 433 U.S. 307, 319, 99 S.Ct. 2781 (1979); *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). When performing a legal sufficiency review, the court may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and substituting its judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).

The court must consider all of the evidence submitted before the jury, including inadmissible evidence. *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Specifically, the Court held that "once the trier of fact has weighted the probative value of unobjected-to hearsay evidence in its fact finding process, an appellate court cannot deny that evidence probative value or ignore it in a review of the sufficiency of the evidence. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (citing *Fernandez v. State*, 805 S.W.2d 451,

453–56 (Tex. Crim. App. 1991) and *Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex. Crim. App. 1986).

### A. The State proved every required element for the offense of possession with intent to deliver beyond a reasonable doubt.

A person commits the offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in penalty group one. TEX. CON. SUB. ACT § 481.112(a) (Vernon 2015). Possession means "actual care, custody, control or management." TEX. PEN. C. § 1.07(a)(39) (Vernon 2015). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his or her control of the thing for a time sufficient to terminate his or her control. TEX. PEN. C. § 6.01(b) (Vernon 2015).

The indictment required proof of the following elements: 1) On or about the 9th day of November, 2010 in Hunt County, Texas; 2) Bobby Joe Evens aka Bobby Joe Grant; and 3) knowingly or intentionally possessed with intent to manufacture or deliver a controlled substance, cocaine, in an amount of more than four grams but less than two hundred grams. CR 6–7.

### B. Appellant admitted his guilt to this crime as part of his prior testimony in a federal case.

In his federal testimony Appellant said he was a drug dealer who sold cocaine to Smith in up to 7 gram amounts during the timeframe to include November 9,

2010 at various convenience stores in Greenville, Hunt County, Texas while driving his truck. *See supra* Point of Error One section A. A reasonable inference from this testimony shows that Appellant admitted to every element of this offense in his prior federal testimony. *Id.*

### C. The jury heard undisputed evidence that this offense occurred on November 9, 2010 in Hunt County, Texas.

Investigator Warren Mitchell told the jury he arrived at the scene of the drug exchange and observed the Appellant on November 9, 2010 in Hunt County, Texas. RR5/18–20. Inv. Jason Whitten also explained to the jury that he observed Appellant meet up with Robert Smith on the same date at the NAT 24 gas station in Hunt County, Texas. RR5/114–120. Lt. Will Cole stopped Appellant just a few blocks from the gas station on the day of the buy. RR 5/133–134. Officer Henderson encountered Smith at the gas station on November 9, 2010 just after the buy occurred. RR5/122–123.

Smith told the jury he came to Greenville, Texas on November 9, 2010 to score some drugs from Appellant. RR5/72–73.

### D. The jury heard undisputed testimony that Appellant was the individual involved in this drug transaction and that he was arrested that day by Greenville police officers.

Inv. Mitchell identified Appellant as the person who delivered drugs to Smith. RR5/p.35, lines 7–17. Robert Lewis Smith also identified Appellant for the jury and told them he had bought drug from the Appellant. RR5/p. 72, lines

18

6–24. Inv. Whitten was able to identify Appellant as the person he saw at the gas station who met with Smith. RR5/114–115. Finally, Lt. Cole identified Appellant as the person arrested right after the delivery just a few blocks from the crime scene. RR5/133–134.

### E. Evidence showed Appellant possessed over four grams but less than two hundred grams of cocaine with intent to deliver.

The testimony of Inv. Mitchell and Whitten detailed how Appellant pulled into the convenience store and Smith got into his truck for a few minutes before Appellant pulled out of the lot. RR5/37–39; 114–116; *See supra* Point of Error One sections B and C. Smith was stopped by officers while still in the convenience store parking lot. RR5/122–123. Appellant was followed from the lot and stopped just a few blocks away from the store in possession of over $1000.00. RR5/133–136; *See supra* Point of Error One section D.

Next, the in car video shows officers searching the car of Robert Smith Jr. directly after the delivery occurred. SE 3. These videos also showed the discovery of cocaine in the car near where Smith was shoving something as officers initiated the stop. *Id. See supra* Point of Error One section E.

The cocaine was published to the jury. SE1; RR5/66–67. Chemist Drew Fout testified to his testing and identification of the cocaine as well as its weight of 5.63 grams. SE1; RR5/108–109.

Furthermore Smith testified he purchased States exhibit 1 from Appellant

19

just prior to the contact with officers and paid Appellant with ten 20 dollar bills. RR5/74–77. Smith stated that he purchased approximately seven grams of cocaine from Appellant, commonly called a "vick", and that he paid $200.00 (or ten 20 dollar bills) for the drugs. RR5/75–76. Smith told the jury that the cocaine seized from him that day was the same drugs he had just purchased from Appellant. RR5/77, lines 11–22. Smith also admitted that he tried to hide the drugs by throwing it down near the console in the car. RR5/77–78.

Lt. Cole's photos show the $200.00 (or ten 20 dollar bills) when he inventoried Appellant's possessions at the time of arrest. SE23–26.

Once he was at the station, Smith confessed to buying cocaine from Appellant that day and told officers that he made regular purchases from Appellant over a period of months. SE4. In fact, Smith told the jury he came to Greenville that day to buy crack cocaine from Appellant. RR5/72, lines 15–21; and p.75, lines 13–17. He paid Appellant $200 dollars in the form of ten $20 bills for the 7 gram purchase. RR5/75–76. Smith knew that a 7 gram buy was called a "Vick." RR5/76, lines 5–14. Appellant took Smith's money and gave him the drugs in a matter of minutes. RR5/76–77. Appellant drove off without getting out of his truck. *Id.* Smith said the officers found the drugs he bought from Appellant that day after he tried to hide them when officers pulled up. RR5/77–78. Smith said he threw the cocaine by the console to try to hide it. *Id.*

Smith sold the drugs he bought from Appellant in Emory, Texas. RR5/81, lines 14–24. Smith testified about the numerous amounts of drugs he purchased from Appellant as well the different locations Appellant met him to conduct the deliveries. RR5/72–73. Smith also told the jury that Appellant made deliveries in the same truck he was driving in November, 2010. RR5/73–74. The jury not only heard Smith's testimony, but they also observed his videotaped confession. SE4.

The State disclosed Smith's criminal history to the jury. RR5/79–81. Smith told them that he was currently a federal prisoner with a drug conspiracy conviction for the drugs he purchased from Appellant that day as well as the other drugs purchased from Appellant over several months by Smith and sold in Emory, Texas. *Id.*; RR5/90–96.

Inv. Mitchell explained the jury how a person could get a hundred and fifty uses of cocaine from the five plus pounds Appellant sold in this case. RR5/41–42. He told the jury that the cocaine would likely be broken down into smaller amounts and sold for pieces that cost as little as ten to five dollars. *Id.* He also explained that the ten dollar rock of cocaine could be broken into three separate uses. *Id.* In November of 2010 seven grams of cocaine sold for around two hundred dollars in Greenville, Texas. RR5/42, lines 8–12. The common street name for seven grams of cocaine was a "vick." RR5/42, lines 13–24. Inv.

21

Mitchell also explained to the jury how cocaine that was seven grams could diminish to just around five and a half grams over time.  RR5/42–43.

The evidence in this case is legally sufficient to prove Appellant guilty of the offense as charged; therefore, his conviction should be affirmed.

## CONCLUSION AND PRAYER FOR RELIEF

The State prays that the Court will affirm Appellant's sentence.

Respectfully submitted,

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**/s/ Keli M. Aiken**
**KELI M. AIKEN**
First Assistant District Attorney
P. O. Box 441
4th Floor, Hunt County Courthouse
Greenville, TX 75403
kaiken@huntcounty.net
State Bar No. 240434482
(903) 408-4180
FAX (903) 408-4296

## CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney or record certifies that Appellants Brief contains 14-point typeface of the body of the brief and contains 3,858 words and was prepared on Microsoft Word 2013.

/s/ Keli M. Aiken
KELI M. AIKEN
First Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX  75403
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been placed in Elisha Hollis' box in the Hunt County District Clerk's Office, today August 12, 2015, pursuant to local rules.

/s/ Keli M. Aiken
KELI M. AIKEN
First Assistant District Attorney